# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOSEPH W. KAMINSKY, JR.,

      Plaintiff,

      v.

DORA B. SCHRIRO, ET AL.,

      Defendants.

No. 3:14-CV-01885 (MPS)

## MEMORANDUM OF DECISION

### I. Introduction

According to the complaint in this case, on December 16, 2011, the United States government notified the Connecticut State Police ("CSP") of its discovery that the plaintiff, Joseph W. Kaminsky ("Mr. Kaminsky"), a firearms dealer and an applicant for renewal of a federal firearms license ("FFL"), had a previous felony conviction in the State of Connecticut. On that day, members of the CSP and the Town of Coventry Police Department ("CPD") responded by entering Mr. Kaminsky's home and seizing his firearms and ammunition without a warrant.[1] Mr. Kaminsky brings this suit against members of the CSP and CPD under 42 U.S.C. § 1983 for unlawful searches and seizures in violation of the Fourth and Fourteenth Amendments and Art. 1, § 7 of the Connecticut Constitution.[2] The sole question before me is whether Mr.

---

[1] Similar entries and seizures not relevant to this decision allegedly took place over the three weeks following the December 16 incident.

[2] 42 U.S.C. § 1983 states:

      Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Article first, § 7 states:

Kaminsky's complaint states a claim against defendant Mark A. Palmer, Town of Coventry Chief of Police ("Chief Palmer"), who seeks dismissal of the suit against him under Fed. R. Civ. P. 12(b)(6).[3] Mr. Kaminsky has filed no memorandum in opposition to Chief Palmer's motion to dismiss. *See* D. Conn. L. Civ. R. 7(a) ("Failure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion."). Because the complaint does not plead facts sufficient to support a reasonable inference that Chief Palmer was personally involved in his subordinates' allegedly unlawful conduct, I grant Chief Palmer's motion to dismiss.

## II. Facts and Procedural History

According to the complaint, Mr. Kaminsky applied for a renewal of his FFL in December 2011. (Compl. ¶ 3 [ECF No. 5].) The federal background check of Mr. Kaminsky revealed a State of Connecticut felony conviction that local, state, and federal checks over the course of several decades had failed to detect. (*Id.* ¶ 87.) On December 16, 2011, the federal government notified a CSP officer, defendant Barbara Mattson ("Officer Mattson"), of Mr. Kaminsky's 1964 felony conviction for unemployment fraud. (*Id.* ¶ 24.)

Officer Mattson and a fellow CSP officer, defendant Vincent Imbimbo ("Officer Imbimbo"), met with Chief Palmer before going to Mr. Kaminsky's home. (*Id.* ¶ 25.) Lieutenant Walter Solenski ("Lt. Solenski") and Sergeant Brian Flanagan of the CPD, CPD Officers Robert Dexter and Ted Opdenbrouw, and CPD Detective Michael Hicks—all of whom are also named as defendants—joined Officers Mattson and Imbimbo in the December 16 visit to Mr. Kaminsky's home, which resulted in the seizure of thirty-six firearms and ammunition. (*Id.*) The

---

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation.

[3] Mr. Kaminsky also sued another defendant, Dora B. Schriro, alleging retaliation for the exercise of his Second Amendment rights, a count not at issue here.

complaint alleges that Lt. Solenski acted "under the direction and supervision" of Chief Palmer in unlawfully entering Mr. Kaminsky's property and seizing his firearms. (*Id.* ¶¶ 116-17.) On December 19, 2011, CSP Officers Mattson and Musial returned to Mr. Kaminsky's home and seized twenty-three firearms and ammunition. (*Id.* ¶ 38.) Additional transfers of firearms, ammunition, and other materials from Mr. Kaminsky to the CPD occurred on December 23, 2011, January 2, 2011, and January 9, 2012, none of which Mr. Kaminsky alleges implicate Chief Palmer. (*Id.* ¶¶ 57-61.)

Mr. Kaminsky applied to the Pardons Board for an expungement of his 1964 felony conviction on January 11, 2012. (*Id.* ¶ 66.) On March 4, 2013, the Pardons Board granted Mr. Kaminsky a full pardon. (*Id.* ¶ 67.) Mr. Kaminsky then obtained a state permit to carry pistols and revolvers from the CSP (*id.* ¶ 68), a local permit to sell pistols and revolvers from the Chief of Police for the Town of Coventry (*id.* ¶ 69), and an FFL issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives. (*Id.* ¶ 70.)

Mr. Kaminsky seeks damages, attorney's fees, and other relief.

### III. Legal Standard for a Motion to Dismiss

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (internal citation and quotation marks omitted). In evaluating a motion to dismiss the Court accepts as true all of the complaint's factual, non-conclusory allegations. *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Finally, the Court must "draw all reasonable inferences in favor of the nonmoving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

## IV. Discussion

Mr. Kaminsky's complaint includes two allegations against Chief Palmer: (1) that "CSP officers Mattson and Imbimbo met with Chief Palmer at the Coventry Police Department then, accompanied by [other named defendants], went to Kaminsky's home and seized 36 firearms and ammunition without a warrant" (Compl. ¶ 25), and (2) that Lt. Solenski, "under the direction and supervision" of Chief Palmer, "unlawfully entered upon the Plaintiff's property without consent and in the absence of a warrant" (Compl. ¶ 116) and "unlawfully seized 36 firearms and ammunition from the Plaintiff's home in the absence of a warrant and by threat of arrest unless the Plaintiff complied." (*Id.* ¶ 117.)

Mr. Kaminsky's claim against Chief Palmer is one of supervisory liability. A plaintiff attempting to establish the supervisory liability of a defendant in a § 1983 claim cannot rely on the doctrine of *respondeat superior*; the defendant must have been "personally involved in a constitutional violation." *Raspardo v. Carlone*, 770 F.3d 97, 122 (2d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Prior to *Iqbal*, one or more of the following forms of conduct was sufficient to prove the personal involvement of a supervisor:

> (1) [T]he defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). While this Court has continued to apply *Colon* since the *Iqbal* decision, the Second Circuit has not yet clarified whether—or how—*Iqbal* alters the *Colon* test. *See, e.g.*, *Boyd v. Arnone*, 48 F. Supp. 3d 210, 218 (D. Conn. 2014) ("Because it is unclear whether *Iqbal* overrules or limits *Colon,* the court will continue to apply the categories for supervisory liability set forth in *Colon*."). However, "there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor." *Aguilar v. Immigration & Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011).[4]

Mr. Kaminsky's claim that a meeting between Chief Palmer and Officers Mattson and Imbimbo took place on December 16, 2011, does not state a supervisory liability claim under any of the *Colon* prongs. First, the complaint alleges no facts suggesting that Chief Palmer, a *municipal* officer, may be considered the supervisor of Officers Mattson and Imbimbo, who are *state* officers "assigned to the CSP [Special Licensing and Firearms Unit] under the direction of D'Alessandro." (Compl. ¶ 18.) The extent to which supervisory liability can exist across organizational structures and outside the usual chain of command is a matter of some doubt. *See Banks v. City of White Plains Police*, No. 14 CV 670 VB, 2014 WL 6642360, at *3 n.4 (S.D.N.Y. Oct. 17, 2014) (dismissing § 1983 supervisory liability claims against a city police officer for alleged violations by county corrections officers); *Kuck v. Danaher*, 822 F. Supp. 2d 109, 140 (D. Conn. 2011) (dismissing § 1983 supervisory liability claims based in part on plaintiffs' failure to plead that the defendant Governor had power over the board allegedly responsible for the violation).

---

[4] At least with respect to the issue in this case, Mr. Kaminsky's claim under article first, § 7 of the Connecticut Constitution is subject to evaluation under the "same analytical framework" as his § 1983 claim under the Fourth Amendment and therefore does not require separate consideration. *State v. Kelly*, 95 A.3d 1081, 1091 (Conn. 2014).

Nevertheless, even if supervisory liability analysis is appropriate as to Officers Mattson and Imbimbo, the complaint fails to plead facts sufficient to support an inference of such liability. The complaint does not discuss the substance of the meeting, including whether it related to Mr. Kaminsky's case at all and what, if any, planned activity Chief Palmer became aware of while speaking with his subordinates. More specifically, the allegation is too spare to permit an inference that Chief Palmer was aware that CSP officers planned to enter Mr. Kaminsky's property and seize his firearms without a warrant.

Thus, with regard to the first *Colon* prong, the complaint fails even to allege that a reasonable basis exists to infer that Chief Palmer "participated directly" in a potential constitutional violation that caused Mr. Kaminsky's injury. Such behavior could include instructing, authorizing, or being present during the search of Mr. Kaminsky's home and seizure of his guns, none of which is alleged here. *Contrast Kastle v. Town of Kent, N.Y.*, No. 13 CV 2256 VB, 2014 WL 1508703, at *13 (S.D.N.Y. Mar. 21, 2014), *appeal dismissed* (May 23, 2014) (denying a motion to dismiss where the complaint pled that the defendant supervisor had directed officer to coordinate with officers from another town in taking actions that constituted possible Fourth Amendment violations); *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520-21 (S.D.N.Y. 2013) (denying dismissal of supervisory defendant where complaint pled that alleged violators attributed their behavior to his directives, but granting dismissal as to remaining supervisory defendants due to no "concrete factual allegations as to the[ir] personal involvement"); *Chandler v. Albright*, No. 1:09-CV-59, 2009 WL 2516114, at *4 (D. Vt. Aug. 12, 2009) (holding that presence of supervisor at scene of alleged § 1983 violation suggested possibility of supervisor's personal involvement and was sufficient to deny a motion to dismiss).

Further, the second and third *Colon* prongs are not at issue, as the complaint does not suggest that Chief Palmer was "informed of the [unconstitutional] violation through a report or appeal" and "failed to remedy" it, or that he created or allowed the continuance of "a policy or custom under which unconstitutional practices occurred." *Colon*, 58 F.3d at 873.[5] As to the fourth and fifth prongs, the complaint does not claim that Chief Palmer exhibited gross negligence or deliberate indifference during or after the meeting with the officers. Mr. Kaminsky has failed to state a deliberate indifference claim against Chief Palmer because the complaint does not plead that Chief Palmer "was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed." *Stamile v. Cnty. of Nassau*, No. CV 10-2632 AKT, 2014 WL 1236885, at *6 (E.D.N.Y. Mar. 25, 2014) (collecting cases). Similarly, Mr. Kaminsky does not submit that Chief Palmer *should have been* aware of any such facts, as a result of his meeting or otherwise. *Id.* at *7 ("The Second Circuit has often equated gross negligence with recklessness, and has defined it as the kind of conduct where the defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk.") (quotation marks omitted). To impute gross negligence or deliberate indifference to a supervisor based solely on the allegation of a previous meeting with tortfeasing subordinates would effectively replace the requirement of personal involvement with the *respondeat superior* liability that § 1983 rejects.

---

[5] Likewise, Mr. Kaminsky's official capacity suit against Chief Palmer is wholly insufficient. The official capacity suit against Chief Palmer is a *Monell* suit against the Town of Coventry, even though Mr. Kaminsky has not named the town as a defendant. *See Doe v. City of Waterbury*, 453 F. Supp. 2d 537, 549 (D. Conn. 2006), *aff'd sub nom. Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008) ("An official capacity suit is simply another way of pleading a claim against a municipality."); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (allowing § 1983 suits against local governments for injuries resulting from unconstitutional government policies or customs). The complaint alleges no facts suggesting that any official policy or custom of the Town of Coventry led to the alleged constitutional violations. The official capacity suit against Chief Palmer therefore is dismissed.

Mr. Kaminsky's second allegation, that Lt. Solenski was acting "under the direction and supervision" of Chief Palmer on December 16, 2011, is conclusory and fails to state a claim. (Compl. ¶ 116-17.) The complaint's only mention of Lt. Solenski's conduct prior to the entry and search is that he—along with several other defendants—accompanied Officers Mattson and Imbimbo as they went to Mr. Kaminsky's home. (*Id.* ¶ 25.) The complaint does not plead any communication or other interaction between Chief Palmer and Lt. Solenski or any conveyance of instructions from Chief Palmer to Lt. Solenski via Officers Mattson and Imbimbo. Although Chief Palmer raised these deficiencies in his motion to dismiss (ECF No. 12) and the Court provided Mr. Kaminsky an opportunity to respond (ECF No. 15), Mr. Kaminsky failed to amend his complaint and, as noted, has submitted no brief opposing the motion to dismiss.

"[T]he conclusory assertion that a supervisory official was personally involved in the deprivation of constitutional rights, without supporting factual allegations, is not sufficient to state a claim under § 1983." *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 274 (W.D.N.Y. 2014) (quoting *Roberites v. Huff*, 11-CV-521SC, 2012 WL 1113479, at *6 (W.D.N.Y. Mar. 30, 2012) and collecting cases). Though Lt. Solenski is Chief Palmer's subordinate, their relationship alone does not establish Chief Palmer's liability for Lt. Solenski's actions. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("[M]ere linkage in the . . . chain of command is insufficient to implicate a [supervisor] in a § 1983 claim"). The conclusory allegation that unlawful acts took place "under the direction and supervision" of Chief Palmer is not sufficient for the claim to withstand a motion to dismiss. *See Morgan v. Cnty. of Nassau*, 720 F. Supp. 2d 229, 235 (E.D.N.Y. 2010) (dismissing § 1983 claims against a police commissioner and commanding officer where the complaint pled "on information and belief" that defendants

were "personally involved in either ordering, or failing to take preventative measures to guard against, plaintiff's constitutional deprivations").

**V. Conclusion**

For the reasons above, I find Mr. Kaminsky has failed to state a claim against Chief Palmer, and I GRANT Chief Palmer's motion to dismiss.


IT IS SO ORDERED.


_____/s/_____

Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                June 16, 2015