# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOSEPH W. KAMINSKY, JR.,

     Plaintiff,

     v.

DORA B. SCHRIRO, Commissioner of the
Department of Emergency Services and Public
Protection, et al.,

     Defendants.

No. 3:14-cv-01885 (MPS)

## CORRECTED RULING ON MOTIONS TO DISMISS

Plaintiff Joseph W. Kaminsky, Jr. brings this civil rights action against state and local officials alleging violations of the First, Second, and Fourth Amendments of the United States Constitution and Article First, Sections 10 and 15, of the Connecticut Constitution. The case arises from the search of, and seizure of firearms from, Kaminsky's property and from Kaminsky's attempts to recover those firearms. Kaminsky sues the following defendants in their individual and official capacities: Dora B. Schriro, Commissioner of the Connecticut Department of Emergency Services and Public Protection ("DESPP"); DESPP Sergeant Paolo D'Alessandro; Chief of the Town of Coventry Police Department ("CPD") Mark A. Palmer[1]; and CPD Lieutenants Walter Solenski and Brian Flanagan. He sues the following defendants in their individual capacities only: Connecticut State Police ("CSP") Officers Barbara Mattson, Vincent Imbimbo, and Sean Musial, and CPD Officers Michael Hicks, Robert Dexter, and Ted Opdenbrouw.

The Amended Complaint asserts three counts. In Count One, Kaminsky claims that Defendants D'Alessandro, Mattson, Musial, Imbimbo, Palmer, Solenski, Flanagan, Dexter,

---

[1] The Court granted Defendant Palmer's motion to dismiss on June 16, 2015. He is no longer a defendant in the case. (ECF No. 32.)

Opdenbrouw, and Hicks unlawfully searched and seized his property in violation of the Fourth Amendment.  In Count Two, Kaminsky asserts retaliation claims against Defendant Schriro under the Second Amendment and Article First, Section 15 of the Connecticut Constitution.  In Count Three, Kaminsky asserts retaliation claims against Defendant Schriro under the First Amendment and Article First, Section 10 of the Connecticut Constitution.

Defendants D'Alessandro, Imbimbo, Mattson, Musial, and Schriro (the "State Defendants") have filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (ECF No. 40.)  The State Defendants argue that (1) this Court lacks jurisdiction over all claims against them in their official capacities, (2) this Court should abstain from addressing Kaminsky's suit in light of a parallel state action, (3) Kaminsky fails to state a claim of retaliation under the First and Second Amendments and the Connecticut Constitution, and (4) Kaminsky fails to state a claim in Count One against Defendant D'Alessandro under the theory of supervisory liability.

For the reasons explained below, the State Defendants' motion to dismiss is granted in part and denied in part.  As to Count One, the claims against the State Defendants in their official capacities are dismissed because they are barred by the Eleventh Amendment and, to the extent they seek injunctive relief, the request for injunctive relief is moot or the Plaintiff lacks standing to seek such relief.  The portion of Count Two asserting a retaliation claim under the Second Amendment is dismissed because it fails to state a plausible claim for relief.  I decline to assert supplemental jurisdiction over the remaining portion of Count Two, asserting a retaliation claim under Article First, Section 15 of the Connecticut Constitution, because it involves a novel and complex question of state law.  As to Count Three, Kaminsky's claim under the First Amendment is dismissed because it fails to state a plausible claim for relief.  Because the other claim asserted in Count Three – asserting a violation of Article First, Section 10 of the

2

Connecticut Constitution – also involves a novel and complex question of state law, I decline to assert supplemental jurisdiction over that claim as well.  Finally, because Kaminsky does not oppose the dismissal of his claim against Defendant D'Alessandro, it is dismissed.

Defendants Solenski and Flanagan (the "CPD Defendants") have also filed a motion to dismiss, in which they argue that Kaminsky fails to state a claim against the CPD Defendants in their official capacities.  (ECF No. 42.)  Kaminsky does not oppose that motion.  It is therefore granted.

The only claim that survives is Kaminsky's Fourth Amendment claim, asserted in Count One, against Mattson, Musial, Imbimbo, Solenski, Flanagan, Dexter, Opdenbrouw, and Hicks in their individual capacities.

## I.      Factual Allegations

The Amended Complaint alleges the following facts.  Prior to December 16, 2011, Kaminsky was licensed by the Town of Coventry, the State of Connecticut, and the United States government to carry and sell pistols and revolvers, possess ammunition and machine guns, and deal firearms as a federal firearms licensee.  (Am. Compl., ECF No. 35-1, at ¶ 2.)  In December 2011, Kaminsky attempted to renew his three-year federal firearms license.  (*Id.* at ¶ 3.)  In performing a background check, the federal government learned that Kaminsky had been convicted of a felony on March 31, 1964.  (*Id.*)  This felony conviction had not appeared during prior background checks conducted by any of the jurisdictions that had previously provided Kaminsky a firearms license.  (*Id.*)

Conn. Gen. Stat. § 53a-217 prohibits felons from possessing firearms; Kaminsky therefore could not possess one legally.  (*Id.* at ¶ 4.)  On December 16, 2011, the Connecticut State Police and Coventry Police Department were informed of Kaminsky's felony.  (*Id.*)  In

response, CSP Officers Mattson and Imbimbo, along with CPD personnel – Chief Palmer, Lt. Solenski, Sgt. Flanagan, and Officers Dexter, Opdenbrouw, and Hicks – searched Kaminsky's property without a warrant and seized 36 firearms and certain ammunition.  (*Id*. at ¶ 25.)  On December 19, 2011, Officers Mattson and Musial returned to Kaminsky's property and seized an additional 23 firearms.  (*Id*. at ¶ 38.)

Seeking to regain his firearms licenses, Kaminsky applied to the Board of Pardons and Paroles (the "Board") to be pardoned for his 1964 felony conviction.  (*Id*. at ¶ 64.)  He explained to the Board that he had forgotten about his felony conviction when applying for his federal firearms license.  (*Id.* at ¶ 65.)  The Board granted Kaminsky a full pardon on March 4, 2013, effectively removing the felony from his criminal record.  (*Id*. at ¶ 67.)

Kaminsky currently holds the following firearm permits: a permit to carry pistols and revolvers issued by CSP on September 10, 2013 (*id*. at ¶ 68), a permit to sell pistols and revolvers at retail issued to him by the Chief of Police for the Town of Coventry (*id*. at ¶ 69), and a federal firearms license issued to him by the Bureau of Alcohol, Tobacco, Firearms, and Explosives on February 1, 2014 (*id*. at ¶ 70).

After receiving the pardon, Kaminsky sought the return of the firearms and munitions seized from his property on December 16 and 19, 2011.  (*Id*. at ¶ 79.)  On August 12, 2013, he filed a "Petition for Declaratory Ruling" in Connecticut Superior Court, seeking, in effect, the return of 30 seized firearms.  (*Id*. at ¶ 10 (the "State Action").)  The Petition asked the court to determine Kaminsky's right to the return of his seized property – namely, six firearms currently held by CSP and twenty-four firearms "of unknown location" – and to determine whether it was lawful for the state to hold his property "in the absence of a criminal arrest, civil forfeiture proceeding, or finding that the property was a nuisance or contraband."  (*Id*.)

On November 7, 2014, while the State Action was still pending, Defendant Schriro threatened to contest Kaminski's pardon, claiming that the Board failed to provide notice of its decision to CSP, depriving it of an opportunity to be heard.  (*Id.* at ¶ 11.)

## II.    Legal Standard

"[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. . . .  In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations and internal quotation marks omitted).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the allegations in the complaint.  In considering such a motion, I must take Kaminsky's "factual allegations to be true and [draw] all reasonable inferences in" his favor.  *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "Although a court must accept as true all of the allegations contained in a complaint, this tenet is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Sikhs for Justice, Inc. v. Gandhi*, 614 Fed. App'x 29, 30 (2d Cir. 2015) (citation and internal quotation marks omitted).

### III. Discussion

#### A. Rule 12(b)(1): Jurisdictional Challenges

##### i. Official Capacity Claims Against State Defendants

Federal courts lack jurisdiction over suits by citizens against a state. *See, e.g.*, *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) ("The Eleventh Amendment effectively places suits by private parties against states outside the ambit of Article III of the Constitution."). This principle extends to a suit brought by a citizen against a state official in her official capacity, which is "another way of pleading an action against the entity of which [the] officer is an agent[; a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–166 (1985).

"An important exception to this general rule is set forth in *Ex Parte Young*, 209 U.S. 123 (1908), which holds that the Eleventh Amendment does not bar suits seeking prospective relief against state officials acting in violation of federal law because such action is not considered an action of the state." *Burnette v. Carothers*, 192 F.3d 52, 57 n.3 (2d Cir. 1999). "[I]n determining whether the *Ex* [*P*]*arte Young* doctrine applies to avoid an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Western Mohegan Tribe & Nation v. Orange Cty.*, 395 F.3d 18, 21 (2d Cir. 2004) (internal quotation marks omitted).

The State Defendants argue that "the plaintiff has made no claim for prospective injunctive relief against any of these defendants," and that "the plaintiff has sued state defendants for money damages in both their official and individual capacities."  (State Defs.' Mem., ECF No. 41, at 15.)  This argument, as Kaminsky points out, is only partially correct.  With respect to the claims in Count One against the state officers in their official capacities, Kaminsky seeks damages resulting from past conduct that occurred on December 16 and 19, 2011.  Such claims clearly do not "allege an ongoing violation of federal law and seek relief properly characterized as prospective."  Thus, the Court lacks subject matter jurisdiction over those claims.

Drawing all reasonable inferences in Kaminsky's favor, as I must, I conclude that Kaminsky seeks injunctive relief in Counts Two and Three.  I conclude, however, that the request for injunctive relief is moot or that Kaminsky lacks standing to seek such relief.  The prayer for relief includes no express request for injunctive relief.  Nonetheless, in Count Two, Kaminsky alleges that "Schriro's unlawful retaliatory conduct caused Kaminsky to implement a substantial change in his litigation strategy," (*id*. at ¶ 131), and that "Kaminsky was forced to engage counsel in order to file this District Court action . . . in order to request injunctive relief to protect himself against the threatened unlawful retaliatory conduct which would have had negative consequences for hi[s] pardon," (i*d*. at ¶ 132).  Kaminsky makes the same claim in Count Three using identical language.  (*Id*. at ¶ 144–145.)  While elliptical, these statements suggest an intent to seek injunctive relief that would prevent Schriro or D'Alessandro[2] from further retaliating against Kaminsky.

---

[2] It is unclear whether Kaminsky seeks injunctive relief against Defendant D'Alessandro.  While he does not name D'Alessandro as a defendant against whom he asserts the retaliation claims in Counts Two or Three, the discussion in his memorandum on this point suggests that he fears retaliation from D'Alessandro.  (*See* Pl.'s Mem. Opp. at 9 ("The Pardons Board declined to reconsider Kaminsky's pardon, but he is not free from the prospect of future retaliation from Schriro *or D'Alessandro*."

Nonetheless, Kaminsky has failed to demonstrate that there remains a live controversy

with respect to the challenge to his pardon allegedly threatened by Schriro or D'Alessandro.[3]

"When the issues in dispute between the parties are no longer live, a case becomes moot, and the

court—whether trial, appellate, or Supreme—loses jurisdiction" over that issue(s).  *Lillbask ex*

*rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005) (citations and

internal quotation marks omitted).  "Longstanding principles of mootness . . . prevent the

maintenance of suit [or claim] when there is no reasonable expectation that the wrong will be

repeated. . . . [It must be] absolutely clear that the allegedly wrongful behavior could not

reasonably be expected to recur."  *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,

484 U.S. 49, 66 (1987).  Mootness "occurs when the parties have no legally cognizable interest

or practical personal stake in the dispute."  *ABN Amro Verzekeringen BV v. Geologistics Ams.,*

*Inc.*, 485 F.3d 85, 93 (2d Cir. 2007).

In his memorandum, Kaminsky admits that the Board, in response to Schriro's letter

challenging Kaminsky's pardon, declined to reconsider Kaminsky's pardon.  (*See* Mem. Opp.,

ECF No. 49, at 9 & n.7.)  In fact, he attaches to his brief correspondence including (1) Schriro's

February 3, 2015 letter to the Board of Pardons and Paroles requesting reconsideration of his

pardon, (2) an April 24, 2015 letter from his attorney to the Board of Pardons opposing Schriro's

request, and (3) a May 7, 2015 letter from the Board's chairperson stating that he had "found no

cause for a review to revoke the pardon of Mr. Kaminsky."  (ECF No. 49-3.)  In other words,

---

(emphasis added) (footnote omitted)).  Because it has no effect on the outcome, I assume that Kaminsky
seeks an injunction against D'Alessandro as well as Schriro in Counts Two and Three.

[3] While the State Defendants do not raise this issue in their memorandum, the Court must raise issues of
mootness *sua sponte*.  *Muhammad v. City of New York Dep't of Corrs.*, 126 F.3d 119, 122 (2d Cir. 1997)
("Neither party has raised the issue of mootness . . . but because it is a jurisdictional question, we must
examine the issue *sua sponte* when it emerges from the record.").

Schriro was unsuccessful in her alleged retaliation against Kaminsky, and Kaminsky has identified no other recourse Schriro or D'Alessandro can take to challenge Kaminsky's pardon. Indeed, while I have construed the complaint to seek some form of injunctive relief, I note that it nowhere identifies any actions Kaminsky is seeking to enjoin, other than "the threatened unlawful retaliatory conduct *which would have negative consequences for hi[s] pardon*." (Compl. ¶ 132 (emphasis added).)  There are no allegations and nothing in the record supporting a "reasonable expectation" that either Schriro or D'Alessandro is likely to engage in any future conduct that "would have negative consequences for his pardon."

Kaminsky's claim for injunctive relief against Schriro and D'Alessandro regarding petitioning activity before the Board therefore has become moot.  Kaminsky's allegations, combined with the evidence he has provided the Court, demonstrate that there is no reasonable prospect that Schriro or D'Alessandro will retaliate against Kaminsky by challenging his pardon because the Board has already considered and rejected that request.  Because there are no allegations providing any reason to believe that Schriro or D'Alessandro will again attempt to petition the Board to reconsider its decision, Kaminsky's claim requesting the Court to enjoin Schriro or D'Alessandro from doing so is moot.

Kaminsky also argues that he is entitled to an injunction barring Schriro and D'Alessandro from engaging in any retaliatory conduct because Kaminsky's license must be renewed every five years, and as a result, he will have to "deal[] with Schriro and D'Alessandro" when he seeks renewal.  (Pl.s' Mem. Opp. at 9–10.)  He does not identify what he fears Schriro or D'Alessandro will do that will be "retaliatory" when he seeks to renew his license.  Kaminsky lacks standing to assert such a claim because his fear of encountering Schriro or D'Alessandro is speculative – in that he cannot identify the future unlawful conduct he seeks to enjoin – and fails

to demonstrate any real or immediate danger of constitutional injury.  "[An] equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (citation omitted)); *see also Clapper v. Amnesty Int'l, USA*, 133 S. Ct. 1138, 1147 (2013) ("To establish Article III standing, an injury must be . . . actual or imminent . . . . Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." (emphasis in original)); *Marshall v. Switzer*, 900 F. Supp. 604, 615–16 (N.D.N.Y. 1995) ("While the Court recognizes that it is likely that plaintiff will have to purchase a new van at some time in the future, [which may lead to the unlawful application of certain regulations against him,] that is an event far too remote in time to compel injunctive relief in the present case.").[4]  It is not clear that Schriro, a political appointee, will even be in office by the time Kaminsky applies to renew his license; but even assuming Kaminsky will be forced to interact with Schriro or D'Alessandro to renew his license in the next few years, Kaminsky has not suggested any manner in which those defendants would retaliate against him, let alone that such conduct is "certainly impending."

The Eleventh Amendment bars all of Kaminsky's damages claims against the State Defendants in their official capacities.  Further, Kaminsky's vague requests for injunctive relief

---

[4] A plaintiff's standing is determined at the time he files a complaint.  *Sugarman v. Vill. of Chester*, 192 F. Supp. 2d 282, 288 (S.D.N.Y. 2002) ("The determination of whether standing exists . . . is made as of the time the Complaint was filed." (citation omitted)).  Thus, although Kaminsky's constitutional objections to Schriro's challenge to his pardon have now become moot, he did have standing to make those objections when he filed suit in late 2014.  As shown, the same cannot be said for his future, speculative concerns about renewing his license.

against Schriro or D'Alessandro are, in one case, moot and, in the other, made without standing. Those claims are dismissed.

### ii. Abstention

Next, I consider the State Defendants' request that this Court abstain from addressing Kaminsky's remaining claims under the *Colorado River* abstention doctrine. Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (internal quotation marks omitted). A federal district court may nonetheless dismiss a suit "for reasons of wise judicial administration," such as when a parallel state court action is concurrently pending. *See id.* at 818. Actions are "parallel" when "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012).

*Colorado River* instructs district courts to consider six factors in determining whether to dismiss a suit when a parallel state action is pending:

> (1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceedings will adequately protect the rights of the party seeking to invoke federal jurisdiction.

*Village of Westfield v. Welch's*, 170 F.3d 116, 121 (2d Cir. 1999). "[T]he facial neutrality of a factor is a basis for retaining jurisdiction," *Woodford v. Cmty. Action Agency of Greene Cty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001), because abstention analysis is not meant "to find some

substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 25–26 (1983) (emphases in original).

Abstention under *Colorado River* is not proper here.  With respect to the first factor, the Amended Complaint alleges the violation of Kaminsky's civil rights and, as noted, seeks damages and injunctive relief for those alleged violations.  It does not seek the return of any property or the assumption by this Court of jurisdiction over any *res* or property.  The State Action, by contrast, seeks a declaration of Kaminsky's ownership rights with respect to certain firearms.  This federal civil rights action will in no way interfere with any declaration of Mr. Kaminsky's ownership rights in the State Action, as none of Mr. Kaminsky's claims in this case turn on whether he *currently* owns the firearms and has a right to their return.  While his ownership rights in the firearms at the time of the alleged search and seizure may be relevant to his Fourth Amendment claim, his current ownership rights – especially following his pardon – are of no import in this case.  In short, the dispute regarding the ownership of the firearms in the State Action is distinct from his claims here that the defendants violated his constitutional rights.  Because "the absence of a res points toward exercise of federal jurisdiction," *Woodford*, 239 F.3d at 522 (internal quotation marks omitted), this factors weighs against abstention.

Second, neither forum presents any particular inconvenience to the parties.  A forum is inconvenient when it is "oppressive and vexatious to the defendant[s,] . . . out of all proportion to the plaintiff's convenience, or . . . inappropriate because of considerations affecting the court's own administrative and legal problems."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)

(internal quotation marks omitted).  The State Defendants argue that "[c]ontinuation of this case in the federal forum is inconvenient because the issues raised herein cannot be fully resolved without resolution of the ownership issues currently pending before the state court."  (State Defs.' Mem., at 18.)  As discussed above, the claims in this suit do not rely on any ownership issue that may be litigated in the State Action.  Further, the State Defendants' argument in this respect does not speak to this factor, but rather concerns the third and fourth *Colorado River* factors, discuss below.  As Kaminsky argues, the federal forum is no more or less convenient than the state forum because "the travel for any witness would be substantially the same."  (Pl.'s Mem. Opp., ECF No. 49, at 12.)  "[W]here the federal court is just as convenient as the state court, that factor favors retention of the case in federal court."  *Woodford*, 239 F.3d at 523 (internal quotation marks omitted).

The third factor – the desirability of avoiding piecemeal litigation – also weighs against abstention.  The claims asserted in this action and the State Action are distinct and present different issues.  As Kaminsky argues, "[t]he ownership of the firearms at issue is separate and distinct from violations of the Second, Fourth, and Fourteenth Amendments raised in [this Court]."  (Pl.'s Mem. Opp., at 11.)  Because the State Action and this action are different and independent of one another, litigating these suits separately does not raise a concern regarding piecemeal litigation.  The scenario envisioned by *Colorado River* "involve[s] lawsuits that pose[] a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel."  *Woodford*, 239 F.3d at 524.  No such risk exists here.  The State Defendants' argument that "all of the claims made in the federal lawsuit could have been filed, and adjudicated, in the prior pending state lawsuit" is irrelevant to this analysis.  (State Defs.' Mem.

13

at 18.)  Instead, what matters is whether judgment in one action alters the legal basis for a claim made in the other action.  Again, this case presents no such scenario.

The fourth factor examines the order in which the cases were filed.  In considering this factor, courts should look not only to which complaint was filed first, but the stage of litigation at which each case stands.  *Woodford*, 239 F.3d at 524–25 ("Although the district court found that the state complaints preceded the federal complaints and that discovery in the federal actions had not yet commenced, it made no finding that the state actions had progressed.").  The State Action began almost six months prior to this action.  (State Defs.' Mem., at 18.)  Neither party, however, has specified the current status of the State Action.  Thus, while the State Action was filed first, the Court lacks sufficient information to give this factor any significant weight in favor of abstention.

The fifth factor – the source of law supplying the rule of decision – weighs against abstention.  The Defendants argue, "[w]hile issues of federal constitutional law have been raised, it is state law which will supply the answers with regard to whom the surrendered firearms rightfully belong."  (*Id.*)  As stated, however, Kaminsky's claims in this Court in no way rely on the ownership issue being litigated in the State Action.  Rather, this action involves almost exclusively federal claims.  *See Moses H. Cone Mem. Hosp.*, 460 U.S. at 26 ("Although in some rare circumstances the presence of state-law issues may weigh in favor of [abstention], the presence of federal-law issues must always be a major consideration weighing against surrender." (citation omitted)).

Finally, I consider whether the State Action will adequately protect the rights of the party seeking federal court jurisdiction.  The State Defendants argue that "[t]here is no reason why the plaintiff's rights, both state and federal, cannot be protected by the Connecticut Superior Courts."

14

(State Defs.' Mem., at 18.)  The fact that Kaminsky can raise his constitutional claims in state

court, however, holds little weight with respect to this factor: given the fact that state courts

possess general jurisdiction, if a plaintiff's ability to raise federal claims in state court supported

abstention, this factor would point towards abstention in every case, making it the rule rather

than the "extraordinary and narrow exception," *Colorado River*, 424 U.S. at 813, it is supposed

to be.  Instead, this factor acts as a backstop to prevent abstention in the scenario in which the

other factors *favor* it.  For example, if the state court could not provide the same relief to plaintiff

that would otherwise be available in federal court, this factor would neutralize other factors

weighing in favor of abstention.  *See Woodford*, 239 F.3d at 525.

In sum, all but one of the *Colorado River* factors weigh against abstention, and that single

factor holds very little weight. To the extent that State Defendants rely on abstention to argue in

favor of dismissal, their motion is denied.

### B. Rule 12(b)(6): Whether Kaminsky Has Stated A Plausible Claim for Relief in Counts Two and Three

#### i. Count Two: Second Amendment Retaliation

In Count Two, Kaminsky claims that Schriro violated his rights under the Second

Amendment by retaliating against Kaminsky in response to his filing of the State Action.  The

State Defendants argue that Kaminsky has failed to state a claim of a violation of the Second

Amendment because, even if Schriro's actions were retaliatory, Kaminsky was not actually

asserting a right protected by the Second Amendment in the State Action.  The Second

Amendment protects an "individual right to possess and carry weapons in case of confrontation."

*District of Columbia v. Heller*, 554 U.S. 570, 592 (2008); *see also McDonald v. Chicago*, 130 S.

Ct. 3020, 3026 (2010) (incorporating the same right against the states).  But "[t]he case law that

exists . . . indicates that the right to bear arms is not a right to hold some particular gun." *Vaher*

*v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 429 (S.D.N.Y. 2013) (internal quotation marks omitted; citing cases). In other words, the Second Amendment right to possess firearms is implicated only when an individual is left unable to possess firearms at all. *Id.* at 430 (dismissing plaintiff's Second Amendment claim because "there is no allegation that Defendants' actions have affected Plaintiff's ability to retain or acquire other firearms or ammunition, and no law has been cited that infringes on Plaintiff's right to obtain other firearms"). Thus, the State Defendants argue, no unconstitutional retaliation occurred with respect to Kaminsky's Second Amendment rights because Kaminsky was not exercising a right under the Second Amendment by bringing the State Action to recover the particular firearms taken from his home in 2011.

Kaminsky responds that the State Action represents more than just an assertion of ownership of "certain guns." Instead, he argues, "Schriro's letter to [the] Pardon's Board was an attack on Kaminsky's Second [A]mendment rights initiated after he attempted to resolve the issue of the firearms in the Connecticut Superior Court by filing a declaratory judgment action on August 6, 2014." (Pl.'s Mem. Opp. at 20.) This argument is unconvincing. In order to allege adequately that Schriro retaliated against him because he asserted a constitutional right, Kaminsky must first allege facts showing that he was exercising a right that the Constitution actually protects. *Cf. ACLU of Md., Inc. v. Wicomico Cty, Md.*, 999 F.2d 780, 785 (4th Cir. 1993) (per curiam) ("A plaintiff alleging that government officials retaliated against her in violation of her constitutional rights must demonstrate, *inter alia*, that she suffered some adversity in response *to her exercise of protected rights*." (emphasis added)). The Amended Complaint fails in this respect because it does not allege facts suggesting that Kaminsky was exercising his Second Amendment rights in filing the State Action.

16

In fact, Kaminsky concedes that his right to possess firearms was already vindicated when the Town of Coventry and the State of Connecticut reissued his firearms licenses.  (*See* Pl.'s Mem. Opp. at 21–22 ("The Coventry Police Department and DESPP already made a determination that Kaminsky was a suitable person to '. . . purchase, carry, possess, transfer, and sell all legal firearms in the State of Connecticut[]' and then issued him a permit to carry pistols or revolvers." (footnote omitted)).  Indeed, the amended complaint alleges that federal, state, and local authorities – including the DESPP (through its division, the Connecticut State Police) – issued new firearms licenses to Kaminsky before he filed the State Action in August 2014 and before Schriro threatened to seek reconsideration of his pardon in November 2014.  Am. Compl. ¶'s 68-70 (alleging that Kaminsky received permit from [Connecticut State Police, a division of DESPP] to carry pistols and revolvers on September 10, 2013, "currently holds" permit to sell pistols and revolvers at retail from Town of Coventry, and received federal firearms license on February 1, 2014); id. ¶ 136 (Kaminsky filed State Action on August 12, 2014);[5] ¶ 11 (Schriro threatened to contest Kaminsky's pardon on November 7, 2014).  In other words, according to the Complaint, Kaminsky's right to possess firearms was fully restored well before he filed the State Action.

It appears, then, that the State Action was not an effort to regain the right to possess firearms generally, but rather to re-possess certain firearms and ammunition that were seized from his property.  Because the Second Amendment is not implicated by that issue, Schriro's

---

[5] Although the Amended Complaint also alleges that the State Action was filed on August 12, 2013 (Am. Compl. ¶ 10), that is an error.  The state court docket indicates that the State Action was actually filed on August 6, 2014, and that it is dated July 24, 2014 – several months after Kaminsky received his firearms licenses.  *See* http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=TTDCV146008 362S (last visited on June 18, 2016); *see also* http://civilinquiry.jud.ct.gov/DocumentInquiry/DocumentI nquiry.aspx?DocumentNo=7909481.  This Court may take judicial notice of the filing date of the State Action.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (docket sheets are public records of which the court may take judicial notice).

alleged threat in response to the filing of the State Action could not constitute retaliation in violation of the Second Amendment, to the extent such a cause of action exists. [6]

Kaminsky also cites Schriro's letter to the Connecticut Board of Pardons and Paroles, in which she "formally request[ed] that the Board of Pardons review the pardon issued to Mr. Kaminsky, along with the attached information, in order to determine if the pardon should stand as is, be revoked, *or have a condition of no firearms added.*" (*Id.* at 22 (emphasis in original).) This quotation also fails to resolve the flaw in Kaminsky's Second Amendment retaliation claim identified above, i.e., that the filing of the State Action was not an exercise of Second Amendment rights. If Schriro's actions had resulted in Kaminsky's inability to possess any firearms, that result might have implicated Kaminsky's rights under the Second Amendment and might have provided grounds for a claim of the direct violation of a constitutional right. [7] But such an outcome would not have provided grounds for a *retaliation* claim. The fundamental inquiry in a retaliation claim is whether the claimant was punished for the prior exercise of a constitutional right; although the punishment itself may implicate constitutional protections, it does not amount to unconstitutional *retaliation* unless the prior conduct targeted by the punishment was itself constitutionally protected. Because the filing of the State Action was not

---

[6] I have been unable to find any case law recognizing a claim of retaliation arising under the Second Amendment. The cases that Kaminsky cites in support of this claim involve exclusively First Amendment retaliation claims. (*See* Pl.'s Mem. Opp. at 22–23 (citing, *inter alia*, *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83 (2002) (addressing a cooperative hosing unit share owners' First Amendment retaliation claim); *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008) (addressing a former community center employee's First Amendment retaliation claim); *Spear v. Town of W. Hartford*, 954 F.2d 63 (2d Cir. 1992) (citizen asserting that the town's RICO suit against him violated his First Amendment rights).) Nonetheless, I need not decide whether the Second Amendment independently protects against retaliation in this context, because even if it does, Kaminsky has failed to plead facts that actually invoke this protection.

[7] It also might not have. The Supreme Court has suggested that the Second Amendment does not prohibit well-established limitations on the rights it protects, including "longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626.

an exercise of Kaminsky's Second Amendment rights, Kaminsky's claim for retaliation under the Second Amendment fails.  As a result, that portion of Count Two is dismissed.

### ii. Count Two: Connecticut Constitution, Article One, Section 15 Retaliation

In Count Two, Kaminsky also asserts a retaliation claim under Article One, Section 15 of the Connecticut Constitution.  Article One, Section Fifteen of the Connecticut Constitution provides that "[e]very citizen has a right to bear arms in defense of himself and the state." Conn. Const. art. I, § 15.  In their motion to dismiss, the State Defendants argue that this Court should decline to assert supplemental jurisdiction over this claim because it "raises a novel or complex issue of State law."  28 U.S.C. § 1367(c)(1).  This claim presents a novel or complex issue of state law, they argue, because neither the Connecticut Supreme Court nor the Connecticut Appellate Court has recognized a private right of action under Article 1, Section 15 of the Connecticut Constitution.

Kaminsky responds that he is not "asking the [C]ourt to recognize a private right of action," but rather is "asking the [C]ourt to find he has a right to be free from government retaliation for asserting his right to bear arms under Article First, Section Fifteen."  (Pl.'s Mem. Opp. 28–29.)  While his argument is far from a model of clarity, Kaminsky seems to assert that Schriro's allegedly retaliatory actions amounted to a violation of his right to bear arms under Article First, Section 15, because it restricted that right without providing due process:

> *Kelley Prop. Dev. Inc. v. Town of Lebanon*, 226 Conn. 314, 321–22 (1993) holds that Connecticut adopts the Second Circuit Court of Appeals' "clear entitlement" test as a guide to determining whether a civil rights claimant in a land regulation case has stated a due process claim under the federal constitution.

> . . .

> The Connecticut Supreme Court holds Article First, Section Fifteen to be an established, constitutionally protected interest, "The constitutional right to bear

19

> arms would be illusory, of course, if it could be abrogated entirely on the basis of a mere rational reason for restricting legislation." *Benjamin v. Bailey*, 234 Conn. 455, 469 (1995)[. *Benjamin* and] *Kuck* [*v. Danaher*, 600 F.3d 159 (2d Cir. 2010)] maintain[ that] it is clearly established and valued . . . .

(Pl.'s Mem. Opp. at 29–30.)  Nowhere in the Amended Complaint, however, does Kaminsky assert a due process violation or even mention due process.  Further, the Amended Complaint's formatting indicates that Kaminsky's claim does attempt to assert a private right of action arising from Article First, Section 15 of the Connecticut Constitution: Count Two's heading reads "Second and Fourteenth Amendment to the United States Constitution; Retaliation; 42 U.S.C. §§ 1983, 1988 and Connecticut Constitution, Art. 1, § 15 Against CSP Defendant[] Schriro."  (Am. Compl. at 19.)  The placement of Article First, Section 15 next to the mention of Section 1983 – a private cause of action – suggests that Kaminsky seeks to assert a cause of action under that section of the Connecticut Constitution.  Because Section 1983 provides a cause of action for violations of federal law only, for Kaminsky to state a claim of violation of Article First, Section 15, that provision must provide him with a private cause of action to assert his claim.

Under 28 U.S.C. § 1367(c)(1), a "district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim raises a novel or complex issue of State law."  For the same reasons cogently identified by Judge Bryant in *Doutel v. City of Norwalk*, the question of whether Article First, Section 15 provides citizens with a private cause of action presents a novel and complex issue of state law:

> Neither the Connecticut appellate nor the Connecticut Supreme Court . . . has opined as to whether Article 1, § 15 creates a private right of action. . . .

> In *Binette v. Sabo*, 244 Conn. 23 (1998), the Connecticut Supreme Court recognized a narrow cause of action for money damages under Article First, §§ 7 and 9 of the Connecticut constitution for illegal searches and seizures of private residences by law enforcement officers acting without a warrant, drawing from the federal equivalent of a *Bivens* action under the Fourth Amendment to the U.S. Constitution. . . . In creating a private right of action under sections 7 and 9,

20

> though, the Connecticut Supreme Court emphasized that its decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution.  The court further instructed that [w]hether to recognize a cause of action for alleged violations of other state constitutional provisions in the future must be determined on a case-by-case basis.  As in the present case, that determination will be based upon a multifactor analysis.  The factors to be considered include: the nature of the constitutional provision at issue; the nature of the purported unconstitutional conduct; the nature of the harm; separation of powers considerations and the other factors articulated in *Bivens* and its progeny; the concerns expressed in *Kelley Property Dev., Inc.* [*v. Town of Lebanon*, 226 Conn. 314 (Conn. 1993)]; and any other pertinent factors brought to light by future litigation.  *Id.* at 48.

> Since *Binette*, Connecticut courts have rejected numerous constitutional torts claims under various sections of the state constitution. . . .

> Here, it is appropriate to decline supplemental jurisdiction where this Court would be forced to interpret Connecticut constitutional law in the absence of any state court precedent regarding whether a private right of action exists under Article First, section 15.

No. 3:11-cv-1164 (VLB), 2013 WL 3353977, at *26–27 (D. Conn. July 3, 2013) (citations and internal quotation marks omitted).  Like the plaintiff in *Doutel*, Kaminsky fails to identify any controlling case law recognizing a private cause of action under Article First, Section 15 of the Connecticut Constitution.  Because recognizing such a private cause of action would require this Court to "wade into the uncharted waters of private rights of action under the Connecticut constitution," *id.* at *27, I decline to assert supplemental jurisdiction over that portion of Count Two.

### iii.   Count Three: First Amendment Retaliation

In Count Three, Kaminsky asserts that Schriro's conduct, which Kaminsky alleges was a response to his filing of the State Action, amounted to retaliation in violation of the First Amendment.  The elements of a First Amendment retaliation claim depend on the factual context of the claim; the Second Circuit has fashioned differing elements when the plaintiff has been a prisoner, a public employee, and a private citizen.  *See, e.g.*, *Zherka v. Amicone*, 634 F.3d 642,

644 (2d Cir. 2011) ("We have described the elements of a First Amendment retaliation claim in several ways, depending on the factual context.  For example, public employees must show adverse employment action.  For their part, inmates must show retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." (citations and internal quotation marks omitted)).

As a private citizen suing a public official for retaliation, Kaminsky must allege facts showing: "(1) he has an interest protected by the First Amendment; (2) defendant['s] actions were motivated or substantially caused by his exercise of that right; and (3) defendant['s] actions effectively chilled the exercise of his First Amendment right."  *Curley v. Vill. Of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).  The parties do not dispute that by filing the State Action to seek the return of the firearms and ammunition, Kaminsky was engaging in activity protected by the First Amendment.  *See, e.g.*, *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) ("The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment.").

The State Defendants argue that this claim should be dismissed because Kaminsky's allegations fail to satisfy the third element, which requires "actual chilling" of his exercise of his First Amendment right.  The actual chilling requirement originates from the necessary elements of a Section 1983 claim as well as a basic tenet of standing:

> To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights—in other words, there is an injury requirement to state the claim.  In [a case in which a private citizen asserts a retaliation claim against a public official, the plaintiff] need not show that she was silenced by [the official's] threatened [action]—the First Amendment protects the right to free speech so far as to prohibit state action that merely has a chilling effect on speech.
>
> However, to sustain her claim, [plaintiff] is required to show that the defendant's actions had some actual, non-speculative chilling effect.

*Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002).  Thus, to state a claim, Kaminsky must

either allege facts showing that Schriro "silenced him," *Williams*, 535 F.3d at 78, or some actual

chilling effect resulting from Schriro's conduct that is neither "conclusory" nor "speculative,"

*Spear*, 954 F.2d at 67.  The allegations asserted in the Amended Complaint do not support the

former: none suggest that Kaminsky has been in any way "silenced."  The question I must

address, then, is whether Kaminsky's allegations identify a non-conclusory, non-speculative

chilling of his First Amendment right to seek judicial relief.  I find that they do not.

Kaminsky cites his filing of *this* lawsuit as evidence that Schriro's conduct had a chilling

effect on his First Amendment right: "Kaminsky was chilled enough to file the District Court

action asking for injunctive relief to prevent further retaliation."  (Pl.'s Mem. Opp. at 25.)  This

cannot be enough to satisfy the actual chilling element of a First Amendment retaliation claim.

If it was, every First Amendment retaliation claim would inherently satisfy the actual chilling

requirement.  In support of this argument, Kaminsky cites a portion of the Second Circuit's

discussion in *Gill*, in which the court states, "the test . . . is not whether plaintiff . . . himself was

chilled[;] if that were the standard, no plaintiff likely would prevail, for the very commencement

of a lawsuit could be used by defendants to argue that the plaintiff was not chilled."  389 F.3d at

383–84 (quoting *Walker v. Pataro*, 99 Civ. 4607 (GBD) (AJP), 2002 WL 664040, at *9

(S.D.N.Y. Apr. 23, 2002)).  Yet this statement, which Kaminsky takes out of context, establishes

only the mirror-image of the flaw in his argument: just as the fact that the plaintiff filed a

retaliation claim cannot by itself satisfy the actual chilling requirement, the fact that he has done

so cannot by itself demonstrate that he was not chilled.  *See id.* ("[W]hile subjective chilling is a

general requirement, where a plaintiff alleges that the protected conduct at issue is the prior filing

of a *grievance* or *lawsuit* against the defendant, it would be unfair in the extreme to rule that

23

plaintiff's bringing of the subsequent claim in itself defeated his claim of retaliation." (emphasis in original)).  In other words, the fact that Kaminsky has filed this lawsuit does not in itself defeat his claim that he has been chilled, but it also does not itself satisfy the element of actual chilling.

The complaint asserts no facts suggesting that Kaminsky was actually chilled by Schriro's filing of the reconsideration petition because he has alleged "no change in his behavior, [which] quite plainly show[s] no chilling of his First Amendment" rights.  *Curley*, 268 F.3d at 73.  He does not allege that he withdrew his claim in the State Action, nor does he allege that he decided against taking any specific action he would have taken had Schriro not filed the reconsideration petition.  He does allege that Schriro's action "caused [him] to implement a substantial change in his litigation strategy," (Am. Compl. ¶ 144), but the only change he specifies – in the following paragraph – is the filing of this lawsuit.  (*Id.* ¶ 145 ("Kaminsky was forced to engage counsel in order to file this District Court action separate and distinct from the Petition in order to request injunctive relief. . . .").  As noted, that is insufficient to satisfy the actual chilling element.

In this sense, Kaminsky's claim is analogous to those in *Singer*, *Curley*, and *Spear*.  In *Singer*, the plaintiff brought a retaliation claim after he was arrested and charged with petit larceny for taking $11.55 worth of sandwich materials from a shop without paying.  Singer claimed that he had received consent from the store clerk to take the materials and pay later, and that his prosecution was the product of an effort to punish him for publishing a newspaper critical of local officials and thus constituted retaliation in violation of the First Amendment. The court affirmed dismissal of that claim in part because he had "failed to allege with sufficient particularity any actual chilling of his speech, or of his participation in the political process," and

24

adding, "[a]s a matter of fact, Singer continued to publish his newspaper." 63 F.3d at 120.  In

*Curley*, the plaintiff similarly argued that his arrest after a barroom brawl was retaliation in

response to his accusing local officials of improper conduct.  The Second Circuit affirmed

summary judgment against Curley in part because he had alleged no actual chilling: "despite

plaintiff's charge that he was arrested in retaliation for his comments made during [his mayoral

candidacy], he continued his [later] campaign for village trustee even after the arrest and ran

again for village public office" the following year.  268 F.3d at 73.  Finally, in *Spear*, the Town

of West Hartford brought a RICO suit against Spear and others seeking to enjoin certain anti-

abortion protests.  Spear subsequently asserted a First Amendment retaliation claim against the

Town, asserting that the RICO lawsuit was retaliation for his publication of editorials critical of

the Town's handling of the protests.  Spear alleged in his complaint that the retaliation caused

"fear, mental anguish and worry over any potential legal liability . . . , thereby causing a chilling

effect."  954 F.2d at 65.  The Second Circuit affirmed the dismissal of the retaliation claim

because he had not alleged facts suggesting actual chilling: "The complaint offer[s] nothing

beyond a bare assertion that the [RICO] lawsuit caused a chilling effect . . . Spear did not allege

that he had declined to write further anti-abortion editorials, nor did he claim that he had toned

down his writing on the subject.  He did not allege that he had changed even one word of his

writing." *Id.* at 67 (internal quotation marks omitted).  Just as Singer, Curley, and Spear did not

allege actual chilling by failing to identify a change in their behavior, Kaminsky has not alleged

facts suggesting that, as a result of Schriro's petition to the Board, he altered his behavior.  As a

result, he has failed to allege actual chilling.

Kaminsky also contends that Second Circuit case law does not always require actual

chilling.  While he is correct that, in certain cases, the plaintiff need not allege actual chilling,

those are cases in which the plaintiff has alleged an independent injury resulting from a defendant's retaliatory conduct.  Actual chilling is a necessary element of a retaliation claim when, like here, chilling is the only cognizable injury the plaintiff alleges.  *See Gill*, 389 F.3d at 382 (noting that actual chilling has been recognized as an element of a retaliation claim only when "the only *injury* alleged by the plaintiff is, seemingly, the *putative chilling itself* . . . . On this view, defendants are correct that a plaintiff asserting First Amendment retaliation must allege some sort of harm, but they are wrong that this harm must, in all cases, be a chilling of speech" (emphasis in original)); *Zherka*, 634 F.3d at 645 ("[P]rivate citizens claiming retaliation for their criticism of public officials have been required to show that they suffered an actual chill in their speech as a result.  However, in limited contexts, other forms of harm have been accepted in place of this actual chilling requirement." (citations and internal quotation marks omitted)); *LaVertu v. Town of Huntington*, 2014 WL 6682262, at *6 (E.D.N.Y. Nov. 24, 2014) ("Where private citizens allege retaliation for criticism of public officials . . . plaintiffs have been required to allege an 'actual chill' in their speech as a result of the defendants' conduct.  However, recent cases have concluded that the chilling requirement applies only where no other harm is alleged." (citation omitted)).  The cases that Kaminsky cites in support of his argument confirm this point. In *Tomlins v. Vill. Of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357 (S.D.N.Y. 2011), the plaintiff's allegations of retaliatory denials of a building permit and zoning variance constituted sufficient injury to support a retaliation claim.  812 F. Supp. at 371 n. 17.  Similarly, in *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147 (2d Cir. 2006), the plaintiffs claimed that the defendants revoked their permit to operate a nursing home in retaliation for their speech – plainly an independent injury that dispensed with the need to show actual chilling.  Finally, the courts in *Gagliardi* and *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226 (E.D.N.Y. 2009), did

not require the plaintiffs to show (or allege) actual chilling because the defendants' approval of developments and activities on lots adjoining the plaintiffs' properties had a detrimental effect on those properties.

The only injury Kaminsky identifies in his memorandum is an assertion that Schriro's letter to the Board caused a delay of the State Action: "[t]he plaintiff's assertion that the actions of Defendant Schriro delayed the recovery of his property and that her action[s] were retaliatory is precisely that, a conclusion supported by facts set forth to establish the same." (Pl.'s Mem. Opp. at 26.) The only allegation asserted in the Amended Complaint that supports this claim states:

> Schriro's unlawful retaliatory conduct was the proximate cause of the injury, damages, loss, expenses and harm sustained by Kaminsky in that the delay caused in the state court Petition proceeding caused by her threatened unlawful retaliatory conduct harmed his ability to recover his property in the state court Petition, and further caused him grave stress, fear, court costs and attorney's fees.

(Am. Compl. ¶ 146; *see also id.* at ¶ 133 (identical).) This assertion, alone, is both conclusory and speculative. Kaminsky does not allege any facts suggesting how Schriro's conduct caused a delay in the State Action: he does not allege facts suggesting that the state court judge was even aware of Schriro's letter, let alone that the judge stayed the proceedings or otherwise took action to delay a determination of the State Action until the Board acted on Schriro's letter. In the absence of any non-speculative, non-conclusory allegations suggesting that Kaminsky was harmed by Schriro's conduct – in the form of actual chilling or any other injury – Kaminsky's allegations fail to state a claim for First Amendment retaliation.[8]

---

[8] In any event, it appears that Kaminsky's claim would likely fail for a different reason: although I do not decide this issue, I note that qualified immunity would likely shield Schriro from liability for Kaminsky's First Amendment retaliation claim. The complaint alleges that Schriro violated Kaminsky's First Amendment right by, herself, engaging in activity that appears to be First-Amendment-protected petitioning activity. Specifically, she sent a letter to the Board of Pardons and Paroles – an independent state agency not under her control – asking it to reconsider the pardon granted to Kaminsky. Because

Because the facts alleged by Kaminsky do not raise a plausible claim against Schriro for retaliation in violation of the First Amendment, the claim is dismissed.

### iv.   Count Three: Connecticut Constitution, Article One, Section 10 Retaliation

While Schriro does not move to dismiss Kaminsky's claim of retaliation under Article One, Section 10 of the Connecticut Constitution, I dismiss it for the same reasons discussed with respect to Kaminsky's Article One, Section 15 claim.

Article First, Section 10 states, "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."  Kaminsky claims that Schriro violated this provision by retaliating against him for filing the State Action.  In *Binette*, the Connecticut Supreme Court rejected the plaintiff's argument that Section 10 provides a private cause of action to enforce common law rights predating the Connecticut Constitution's establishment in 1818.  *See* 244 Conn. at 31–32 ("[T]he doctrine that, under article first, § 10, the legislature may not diminish pre-1818 common-law or statutory rights without enacting reasonable alternatives . . . does not necessarily imply, as the plaintiffs and amicus assume, that article first, § 10, embodies a private cause of action for pre-1818 'fundamental' common-law rights." (citation omitted)).  While the *Binette* court did not explicitly decide whether Section 10 provided an implied private right of action for the violation of its *own* terms, I have not been able to find a Connecticut case holding that it does – and Kaminsky cites no such case.  This claim therefore "raises a novel or complex issue of State law," 28 U.S.C. § 1367(c)(1), because in

---

such conduct is protected by the First Amendment, qualified immunity would likely prevent Kaminsky from obtaining damages against Schriro.  *See Lynch v. Ackley*, 811 F.3d 569, 580–82 (2d Cir. 2016) (defendant was entitled to qualified immunity on First Amendment retaliation claim in part because she was exercising her own First Amendment rights).

order to recognize Kaminsky's claim, this Court would have to find, in the absence of guidance from the Connecticut Supreme Court, an implied cause of action under the Connecticut Constitution.  For that reason, I decline to exercise supplemental jurisdiction over the Article First, Section 10 claim asserted in Count Three.

### C.  Supervisory Liability Claim Against Defendant D'Alessandro

In his response memorandum, Kaminsky states that he "does not oppose the Motion to Dismiss on the claim made regarding Defendant Sergeant Paolo D'Alessandro's supervisory liability."  (Pl.'s Mem. Opp., at 30.)  The supervisory claim against Sergeant D'Alessandro is therefore dismissed.

### D.  Official  Capacity Claims Against Defendants Solenski and Flanagan

Defendants Solenski and Flanagan seek to dismiss Kaminsky's claims against them in their official capacities, arguing that the Amended Complaint alleges no conduct by the Town of Coventry.  Kaminsky does not oppose this motion.  (ECF No. 50.)  As a result, the claims against Defendants Solenski and Flanagan in their official capacities are dismissed.

### IV.    Conclusion

For the reasons stated above, Defendants' motion to dismiss (ECF No. 40) is GRANTED in part and DENIED in part.  The claims asserted against the State Defendants in their official capacities are DISMISSED, the portion of Count Two asserting a Second Amendment violation is DISMISSED, the portion of Count Three asserting a violation of the First Amendment is DISMISSED, the supervisory claim against Defendant D'Alessandro is DISMISSED, and I decline to assert supplemental jurisdiction over, and therefore dismiss without prejudice, the remaining portions of Counts Two (asserting a violation of Article First, Section 15 of the Connecticut Constitution), and Three (asserting a violation of Article First, Section 10 of the

Connecticut Constitution).  Defendants Solenski's and Flanagan's motion to dismiss (ECF No. 42) is GRANTED and the claims against them in their official capacities are DISMISSED.

The sole remaining claim asserts a violation of the Fourth Amendment Mattson, Musial, Imbimbo, Solenski, Flanagan, Dexter, Opdenbrouw, and Hicks in their individual capacities.


IT IS SO ORDERED.


                                   /s/
                                   Michael P. Shea, U.S.D.J.


Dated:        Hartford, Connecticut
              June 21, 2016